THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BEN CANTRELL, Defendant-Appellant.

(No. 57768;

First District (2nd Division)—October 16, 1973.

Paul Bradley, Deputy Defender, of Chicago, (Kenneth L. Jones, Assistant Appellate Defender, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (James S. Veldman, William K. Hedrick, and James C. O'Rourke, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

The defendant, Ben Cantrell, after a jury trial, was convicted of the murder of Ellen Willis a/k/a Ellen Cantrell. Following a hearing in aggravation and mitigation, he was sentenced to a term of 14 to 25 years.

The testimony at trial revealed that the defendant and the victim, Ellen Willis, had been living together as husband and wife for eight years. During that time, defendant had supported Ellen and her two children.

Roy Drake, a witness for the State, testified that he and his wife owned Roy's Corner Tavern, in the city of Chicago, and lived in an apartment above the tavern. On June 5, 1971, deceased was employed at the tavern and also living with the Drakes. Until three days prior to that date, she had been living with the defendant at the nearby Bel-Ray Hotel. The reason for her change of residence is not explained in the record.

Mr. Drake testified that, on June 5, 1971, at approximately 3:00 P.M., he was in his second floor apartment when he heard "a loud vocal noise and an additional noise." As he stepped to the apartment door, he looked down the stairs and saw Ellen Cantrell lying at the foot of the stairs. The witness then descended the stairs, and went into the tavern where he saw the defendant standing near the door with a gun in his hand.

William Negele, also a witness for the State, testified that he was working as a bartender at Roy's Tavern on June 5, 1971. He stated that the defendant came into the tavern twice that afternoon. During the first visit the defendant asked for a drink and the deceased, who had just entered the tavern, intervened, saying, "Bill, don't serve him no drink because he had plenty." The deceased then went upstairs and the defendant left the tavern. Ten minutes later the defendant returned and stood in the rear of the tavern where he remained for approximately five minutes until the deceased came into the tavern to begin work. Seeing the defendant, the deceased turned quickly and proceeded to the hallway near the stairs. The defendant then advanced to a point just to the right of the witness and, from that position, he pulled out a gun and fired a shot. The defendant then left the witness' side, went to the front of the tavern and, while swinging his hand with the gun in it, stated, "Why, you dirty sonofabitch, I'll get you tonight for sure."

Luis Nunez Herrera, a patron of Roy's Tavern, who was present at the time of the shooting, testified for the State with the aid of an interpreter. He stated that the defendant advanced from the rear of the tavern to meet the deceased as she entered the room and spoke to her briefly. The deceased responded by waving her hands and saying, "No." The defen-

dant then pulled a pistol from his pocket and, as the deceased ran, he raised the gun and fired. Thereafter, the defendant went to the front of the tavern, called to the deceased, and left.

The defendant testified on his own behalf and admitted that he had stopped at Roy's Tavern on the way to work; that he spoke to the deceased, but remained in the tavern only for "a minute and a half"; that he did not own a hand gun and that he did not shoot the deceased.

The defense also presented two witnesses who testified as to defendant's reputation in the community as a peaceful and law-abiding citizen. One witness further testified that he had never known the defendant to commit acts of violence upon the deceased or anyone.

The jury returned a verdict of guilty. At the hearing in aggravation and mitigation, the State produced a written presentence investigation which indicated that the 46-year-old defendant had no previous criminal record other than a charge of driving under the influence. The trial court sentenced the defendant to 14 to 25 years.

On appeal, defendant contends: (1) the legislative mandate that the minimum sentence to be imposed upon a murder conviction must be not less than 14 years is contrary to the letter and purpose of Article I, section 11 of the Illinois Constitution of 1970; and (2) the failure of the trial judge to instruct the jury sua sponte as to voluntary manslaughter violated the defendant's right to a fair trial.

■■ The defendant's contention that the trial court was obligated to give a voluntary manslaughter instruction sua sponte is without merit. At the trial defendant was represented by personally retained, experienced trial counsel. As previously noted, when defendant testified, he denied owning a gun and shooting the deceased. Thus, the sole issue before the jury was whether the defendant committed the murder of the deceased as charged in the indictment. It is also noted defendant's trial counsel did not tender a voluntary manslaughter instruction, and, in our opinion, their failure to tender it was proper and in accordance with defendant's trial strategy.

■■ Defendant's other contention is whether, under our constitution, the sentence imposed on defendant was proper. The sentence of 14 to 25 years is within the limits prescribed by the legislature (Ill. Rev. Stat. 1969, ch. 38, par. 9—1(b)), which section insofar as pertinent provides:

> "A person convicted of murder shall be punished by death or imprisonment in the penitentiary for any indeterminate term with a minimum of not less than 14 years."

It is noted that the minimum of 14 years for murder has been in our Criminal Code since 1873 and still remains.

At the outset, it is significant to consider that defendant did not argue

against the constitutionality of the sentencing statute in the trial court. He now raises this issue for the first time on appeal.

In *People v. Quinn* (1973), 14 Ill.App.3d 226, N.E.2d, the defendant argued for the first time on appeal that the statute under which he was sentenced required a mandatory minimum sentence and, therefore, violated Article I, section 11 of the Illinois Constitution of 1970. This court held that, since the issue was never raised in the trial court, the appellate court would not consider it on appeal. The principle is clearly stated in *People v. Amerman* (1971), 50 Ill.2d 196, 197, 279 N.E.2d 353:

> "The rule is familiar that a nonjurisdictional question which has not been properly presented in the trial court and preserved for review will not be considered on appeal (*People v. Allen*, 17 Ill.2d 55, 61). This rule is, of course, applicable to constitutional questions. 'It is fundamental that the question of the constitutionality of a statute cannot be properly raised for the first time in a court of review, but must have been presented to the trial court and ruled upon by it, and the person challenging its validity must have preserved proper exceptions to such ruling. [Citations.]'"

*Accord, People v. Eubank* (1970), 46 Ill. 2d 383, 263 N.E.2d 869. Thus, defendant's failure to raise this issue in the trial court should preclude this court from considering it now. However, we prefer to consider this question also on its merits.[1]

Article I, section 11 of the Illinois Constitution of 1970 provides:

> "All penalties shall be determined both according to the seriousness of the offense and with the *objective of restoring the offender to useful citizenship* * * *." (Emphasis supplied.)

Thus, the consideration of potential rehabilitation of the offender has been given specific constitutional recognition. *People v. Knox* (1972), 3 Ill.App.3d 1050, 280 N.E.2d 10.

Defendant maintains that the legislative enactment of a minimum sentence, below which the trial court may not set the offender's minimum punishment, violates Article I, section 11 in that it prevents the courts from tailoring the sentence to fit the personal attributes of the offender and the particular nature and circumstances of the offense. To support his contention, he relies on the portion of the proceedings of the 1970 Illinois Constitutional Convention wherein the delegates discussed the

---

[1] Defendant seeks to distinguish *Amerman* primarily on the ground that defendant's constitutional objection to the *sentence* could not appropriately be raised at the trial court level either by pre-trial or by post-trial motion. While we need not advert to this alleged distinction (in view of our decision to treat the defendant's constitutional contention on its merits), we choose to say that we see no reason why this constitutional issue could not have been appropriately raised by defendant at the presentence hearing in aggravation and mitigation.

purpose and scope of section 11. While the transcript of those proceedings reveals that the section is to apply to the legislature as well as the courts (Sixth Ill. Constitutional Convention, Record of Proceedings at 1393), the delegates in their discussion made specific references to the power of the legislature to prescribe the range of penalties for criminal offenses. *Id.* at 1392 and 1393.

The Constitutional Commentary in S. H. A. Const. Art. I, section 11 notes that the new section 11 language prohibits arbitrary or discriminatory sentencing.

■■ Our review of its legislative history, then, suggests that section 11 does not present a mandate opposing minimum sentences. Rather, section 11 requires the legislature to develop sentencing standards that reflect the goal of restoring the offender to useful citizenship, as well as providing a penalty that is proportionate to the nature of the offense (Sixth Ill. Constitutional Convention, Record of Proceedings at 1391).

■■ Thus, this court is left with the well established principle that the courts are "reluctant to override the judgment of the General Assembly with respect to criminal penalties" (*People v. Gonzales* (1962), 25 Ill.2d 235, 240, 184 N.E.2d 833), since

> "The nature, character and extent of penalties are matters for the legislature, which may prescribe definite terms of imprisonment or specific amounts as fines or fix the maximum or minimum limits of either, * * * (*People v. Dixon* (1948), 400 Ill. 449, 453, 81 N.E.2d 257)."

For these reasons, we conclude that the statutory minimum sentence for murder of 14 years is constitutionally permissible.

The judgment of the circuit court of Cook County is accordingly affirmed.

Judgment affirmed.

STAMOS, P. J., and HAYES, J., concur.