THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LAMONT SHUMATE (Impleaded), Defendant-Appellant.

First District (2nd Division)    No. 80-734

Opinion filed March 24, 1981.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant, Lamont Shumate, was charged in an information with robbery, attempt robbery and aggravated battery. (Ill. Rev. Stat. 1977, ch. 38, pars. 18—1, 8—4 and 12—4(a).) In a jury trial defendant was found guilty of attempt robbery and the lesser included offense of battery. He was acquitted of robbery and aggravated battery. For the attempt robbery defendant was sentenced to serve an extended term of eight years in the Department of Corrections, and for battery he received a concurrent term of 364 days. From these judgments and sentences defendant has appealed, presenting the following issues for review: (1) whether the State denied defendant a fair trial where the prosecutor, in response to a remark by defense counsel in his opening statement, objected and commented that defendant could "get out on probation"; and (2) whether the trial court committed error in imposing the foregoing sentences.

For reasons hereinafter set forth we affirm both the judgments and the sentences imposed thereon.

Since a detailed recitation of the testimony elicited at trial is not

necessary in disposing of defendant's contentions on appeal, we briefly summarize the principal evidence.

Testifying for the State were the victim, Mary Ann Chilcutt, and two Chicago police officers, Lieutenant Richard Dwyer and Officer Daniel Dettloff, who witnessed the entire incident. At approximately 1:45 a.m. on January 6, 1979, the victim and a companion, Joey Anderson, were walking west on Evergreen toward the victim's automobile which was parked on Evergreen midway between North Park and Wells. In the same area Lieutenant Dwyer, Officer Dettloff and Officer Philip Watzke were working an undercover detail in an unmarked car. Because they had observed defendant and another man closely following the victim and her friend, the officers stopped their vehicle at the intersection of Evergreen and North Park and kept all four persons in view. As the victim reached her car and started to put the key in the lock on the driver's side, defendant stepped up behind her, grabbed her by the shoulder, spun her around and punched her on the left side of the face, knocking her to the ground. After she fell, the victim saw the second man, whom the officers identified as Vincent Galloway, standing three to four feet away.

Defendant picked the victim's keys off the packed snow and threw them to Galloway, then took hold of the victim's unbuttoned fur coat and said, "Give me your coat, bitch." While they were struggling for the coat the police exited their vehicle and, announcing their office, rushed to the victim's aid. Both defendant and Galloway were apprehended as they attempted to flee from the scene. After defendant was arrested, he denied committing a robbery, claiming that an unidentified "she" had robbed him or a friend of his. Lieutenant Dwyer asked defendant what had been taken. Defendant said, "My wallet. Oh, it's in my pocket." A wallet was later recovered from defendant's pants pocket.

The victim sustained a hairline fracture of the left cheekbone, blurred vision in the left eye, and abrasions to the back of the ear. Her vision continued to trouble her.

Defendant took the stand in his own defense, admitted to a prior conviction for aggravated battery for which he served 26 months in the penitentiary, but denied that he had taken any property from the victim or had even seen her on the street that night. Defendant said that he was picked up by the police on Evergreen shortly after he, his girlfriend Clarisse Brown and his friend Vincent Galloway had left the Club Misty lounge on North Wells looking for a taxicab. The driver of the fourth cab defendant flagged down agreed to pick them up but insisted on being paid in advance. Defendant reached into his back pocket for his wallet but discovered that it was missing. The driver said he would wait for a few moments while defendant tried to find his wallet. He walked 20 to 30

feet west on Evergreen and found his wallet and showed it to Galloway and Brown. As defendant started to return to the taxi, Galloway came down the street to tell him that the cab was going to leave. Before he got back to the cab defendant was overtaken by a vehicle which stopped next to him. Three plainclothes police officers jumped out of the car, grabbed defendant and without any provocation or resistance on his part started striking his face and hands with their pistols. Lieutenant Dwyer pointed his gun at defendant and acted as if he was going to shoot him, but the "short officer" (Dettloff) intervened and said, "Don't shoot." According to defendant, Lieutenant Dwyer put up his gun, grabbed a flashlight and beat him for 10 minutes. Defendant testified that he suffered multiple fractures to his wrists and head as a result of this beating. His glasses were also broken.

Defendant's former girlfriend, Clarisse Termane Lewis, corroborated most of defendant's testimony. She stated that five to seven minutes after defendant left to search for his wallet the cab driver became impatient. Galloway went to find defendant. Two or three minutes later the driver told Lewis she would have to get out of the cab. She pleaded with him to back the cab up so that she could find defendant and Galloway. After the cab backed up, Lewis saw defendant and Galloway being held at gunpoint by three men. She had the driver take her to the nearest police station where she informed the desk officer what she had seen. About a half hour later an officer advised her that defendant and Galloway had been arrested for robbery. On cross-examination Lewis testified that both defendant and Galloway were out of her sight for five to seven minutes.

In rebuttal, Officer Dettloff testified that neither he nor any other officer struck defendant or attempted to shoot him.

The jury returned verdicts finding defendant guilty of attempt robbery and battery and not guilty of robbery and aggravated battery. A presentence investigation report was thereafter prepared which revealed that defendant had previous convictions for theft, criminal trespass to a vehicle and aggravated battery. On the aggravated battery conviction defendant was sentenced to serve two to six years in the penitentiary from which he was paroled on October 13, 1978.

After hearing arguments in aggravation and mitigation, the trial court commented that there are two reasons for sentencing—punishment and rehabilitation. Expressing the belief that there was no hope for defendant's rehabilitation, the court said it would base its sentence solely with the objective of punishing defendant for his conduct. The court found that the extended term provisions applied because defendant previously had been convicted of a crime of the same or greater degree (aggravated battery, a Class 3 felony). The court therefore sentenced defendant to

serve an extended term of eight years in the Department of Corrections on the attempt robbery conviction and 364 days on the battery conviction, the sentences to run concurrently.

I

Defendant's first argument on appeal is that reversible error was committed when, in response to defense counsel's remark in opening statement that defendant would be sent to the penitentiary if convicted, the prosecutor objected and said, "He can get out on probation. Sentencing is something, a matter for the Court, anyway." The prosecutor's objection was overruled. Defendant now contends that by notifying the jury that probation was an available sentence, the prosecutor denied defendant his right to a fair trial because the jury's "reluctance to convict the defendant could be easily overcome by reliance on the knowledge he need not suffer for those convictions but could 'get out on probation.' " The People respond that by not objecting to the prosecutor's remark or raising it in his motion for a new trial defendant has waived it for review. In the alternative the People argue that the error was harmless.

In the case at bar defense counsel made no objection to the prosecutor's remark. If a timely objection is made at trial to an improper remark by counsel, the court, by sustaining the objection or instructing the jury to disregard the remark, can usually correct the error. (*People v. Carlson* (1980), 79 Ill. 2d 564, 577, 404 N.E.2d 233.) Counsel's failure to object at trial waives those errors which the court can correct by sustaining an objection and admonishing the jury. "Otherwise, counsel, by not giving the court the opportunity to prevent or correct error at trial, will gain the advantage of obtaining a reversal through his own failure to act, either intentionally or inadvertently." (*Carlson*, at 577.) This waiver doctrine is not absolute, however. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).) This rule has been construed to permit review of errors that have not been properly preserved for review where the evidence is closely balanced and there is a possibility that an innocent person may have been convicted due to some error which is obvious from the record or where the errors are of such magnitude that the commission thereof denies the accused a fair and impartial trial. *Carlson*, at 576-77.

■■ In light of the evidence in this case where, in addition to the unimpeached testimony of the victim, there was testimony of two Chicago police officers who witnessed the entire incident and arrested the offenders at the scene, we believe it would strain credulity to suggest that the evidence was "closely balanced." Defendant, however, argues that the error is of such magnitude that review is necessary to safeguard his right

to a fair trial. We do not agree. Moreover, we note that defendant failed to raise this issue in his motion for a new trial, which affords an additional reason to deny review. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

Assuming, *arguendo*, that defendant had preserved this alleged error for our review, we would not find that reversible error had been committed.

Our supreme court has repeatedly held that where the jury has nothing to do with fixing the punishment, it is improper for either side in a criminal case to argue the punitive effect of the jury's verdict. (*People v. Klapperich* (1939), 370 Ill. 588, 593-94, 19 N.E.2d 579; *People v. Burgard* (1941), 377 Ill. 322, 330, 36 N.E.2d 558.) In both *Klapperich* and *Burgard*, criminal convictions were reversed even though the prosecutor's remarks that defendant could receive probation were ostensibly made in reply to defense arguments that defendant would be committed to the penitentiary. In the instant case, however, the prosecutor's reference to probation was not made in argument to the jury but by way of objection addressed to the court. This has been found to be of critical significance in determining whether the mention of probation constitutes reversible error.

In *People v. Galloway* (1963), 28 Ill. 2d 355, 192 N.E.2d 370, defense counsel stated in closing argument to the jury that "* * * this is what they have to prove beyond a reasonable doubt before you can send him from the bar of the court to wherever he may be committed." The prosecutor promptly objected, saying, "Objection inasmuch as the offense is probationable," but the objection was overruled. The supreme court found that its previous decisions in *Klapperich* and *Burgard* were not controlling "since the subject was injected by way of objection rather than argument." The court noted, "It was defense counsel who first referred to commitment, thus provoking the objection, and we are loathe to say that reversible error occurred, particularly since the trial court promptly overruled the prosecutor's objection." (*Galloway*, at 362.) See also *People v. Hahn* (1976), 39 Ill. App. 3d 969, 350 N.E.2d 839.

We believe that *Galloway* is determinative of defendant's contention that he was denied a fair trial. We note also that unlike *Galloway*, where the prosecutor's remark was made at the close of the case, here it was made on the first day of trial in objection to defense counsel's opening statement. Although in closing argument defense counsel returned to this theme and commented that defendant was fighting for his freedom and was resisting "the process that would incarcerate and take away freedom," the prosecutor did not object and never again referred to the possibility of defendant receiving probation.

■■ Upon our review of the evidence we are unable to conclude that the

remark complained of constituted a material factor in the conviction or was of such a major character that defendant was substantially prejudiced thereby. *People v. Cimino* (1970), 45 Ill. 2d 556, 257 N.E.2d 97; *People v. Eckles* (1980), 83 Ill. App. 3d 292, 298, 404 N.E.2d 358.

## II

As an alternative to a new trial defendant asks us to remand his case for a new sentencing hearing because of what he describes as a variety of errors the trial court committed in imposing sentence.

## A

Initially, defendant alleges that the trial judge conducted the hearing without regard to the objective of rehabilitating defendant and restoring him to useful citizenship in violation of article I, section 11 of the 1970 Illinois Constitution which provides, in pertinent part, that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." In support of this allegation defendant refers us to the following comments made by the court:

"Now, as far as sentencing is concerned, there is [*sic*] two reasons for sentencing. One is for punishment and the second is for rehabilitation.

As far as rehabilitation is concerned, Mr. Shumate, this Court has absolutely no faith or any hope in you, so we would make this completely punishment, and you can know that as you go to the penitentiary."

Defendant interprets these comments as an indication that the trial court did not consider his potential for rehabilitation. Citing numerous authorities for the proposition that the restoration of the offender to useful citizenship is an objective that must be considered in imposing sentence, defendant contends that he is entitled to a new sentencing hearing. We disagree.

The scope of our review of sentences is limited. Under Supreme Court Rule 615 (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(4)), we are empowered to reduce the punishment imposed by the trial court. Where the sentences imposed are within statutory limits, however, the standard of review is whether the trial court has abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 155, 368 N.E.2d 882; *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541.) "To modify the sentences it must appear to the court that the punishment imposed clearly departs from fundamental law, its spirit and purpose, and the requirement of our constitution that the sentence be proportioned to the nature of the offense

and measure the possibilities for rehabilitation. [Citations.]" *People v. Cunitz* (1977), 45 Ill. App. 3d 165, 174, 359 N.E.2d 1070.

■■ Turning to the facts in the case before us, we cannot concur with defendant that the trial court failed to take into account his potential for rehabilitation. The court specifically acknowledged that rehabilitation is one purpose in sentencing but concluded that there was no realistic prospect of defendant being rehabilitated. This conclusion was reached only after the judge had reviewed the facts in the case and presentence investigation report and had heard arguments in aggravation and mitigation. The court's examination of the presentence investigation report which recited several mitigating factors is, in itself, a basis for finding that defendant's potential for rehabilitation was considered. *People v. Belvedere* (1979), 72 Ill. App. 3d 998, 1026, 390 N.E.2d 1239.

Defendant, however, citing *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491, states that it is not sufficient for the trial judge merely to acknowledge the rehabilitative purpose in sentencing. The judge "must also act on it as an objective of his sentence" and may not "resign to total retribution one who has a chance of future restoration to useful citizenship in the free society." (*Gibbs*, at 648.) In our judgment the opinion in *Gibbs* does not prevent a judge in a proper case from determining that the rehabilitative potential of a defendant is so slight that the penalty imposed may be based solely on principles of retributive justice.

■■ The requirement that all penalties be determined with the objective of restoring the offender to useful citizenship does not have to be given greater consideration than the constitutional requirement that all penalties shall be determined according to the seriousness of the offense. (*People ex rel. Ward v. Moran* (1973), 54 Ill. 2d 552, 556-57, 301 N.E.2d 300; *People v. Henderson* (1980), 83 Ill. App. 3d 854, 870, 404 N.E.2d 392.) We believe that a defendant's potential for rehabilitation may be so minimal that it need not be reflected in the sentence actually imposed. Were it otherwise neither the death penalty nor a natural life sentence without possibility of parole could be imposed. Yet in *People v. Moore* (1973), 15 Ill. App. 3d 691, 693, 304 N.E.2d 696, the court noted that,

"* * * the framers of the 1970 Constitution apparently did not intend the document to abolish the death penalty in Illinois, since a separate referendum regarding its retention was submitted to the voters at the same time the constitution was submitted for approval [Citation omitted.] Since the death penalty is the antithesis of rehabilitative sentencing, this buttresses the notion that article I, section 11 was not intended to make rehabilitation the only consideration in sentencing."

Based on this reasoning the Appellate Court for the Fourth District has upheld the constitutionality of the natural life sentence now authorized

by the Code of Corrections against an argument that that punishment makes impossible the restoring of the offender to useful citizenship. (*People v. Nobles* (1980), 83 Ill. App. 3d 711, 717, 404 N.E.2d 330.) The constitutionality of the mandatory six-year minimum terms for Class X offenses has also been sustained against a similar challenge. See *People v. Mau* (1980), 88 Ill. App. 3d 924, 928, 411 N.E.2d 323; *People v. Perry* (1980), 81 Ill. App. 3d 422, 430, 401 N.E.2d 1263.

In *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 413 N.E.2d 1269, our supreme court reviewed the validity of the Habitual Juvenile Offender Act. (Ill. Rev. Stat., 1979 Supp., ch. 37, par. 705—12.) The Act provides that a juvenile who is adjudicated a delinquent for the third time of having committed an offense which would be a felony if committed by an adult shall be confined until he reaches age 21. In *Chrastka* the respondent juveniles challenged the Act on the ground that the mandatory confinement to age 21 violated the rehabilitative objective of article I, section 11. The court rejected this challenge:

> "The legislature could legitimately conclude that an individual who has committed three such offenses has benefited little from the rehabilitative measures of the juvenile court system and exhibits little prospect for restoration to meaningful citizenship within that system as it had heretofore existed. The rehabilitative purposes of the system are not completely forsaken, but after the commission by an individual of a third serious offense, the interest of society in being protected from criminal conduct is given additional consideration. We consider it to be entirely reasonable and constitutionally permissible for the legislature to so provide and to authorize the disposition specified in the legislative scheme it has developed." *Chrastka*, at 80.

The cases previously cited have all focused on the legislature's power to prescribe certain punishments for specified offenses. These decisions are germane to defendant's argument in the instant case because article I, section 11 was intended to apply to the legislature as well as the courts. (*People v. Cantrell* (1973), 14 Ill. App. 3d 1068, 1072, 304 N.E.2d 13; *People v. Moore* (1973), 15 Ill. App. 3d 691, 693, 304 N.E.2d 696.) Nevertheless, our inquiry must go further. The precise question to be answered is whether the trial judge, consistent with the requirements of article I, section 11, may ever make the determination that a defendant has little or no potential for rehabilitation and impose sentence accordingly. Upon our review of the cases in this area, we believe that he may, given a proper factual basis for that determination.

In *People v. Hayes* (1979), 70 Ill. App. 3d 811, 388 N.E.2d 818, the court refused to reduce a 75- to 100-year sentence for murder even though the defendant contended that the minimum sentence of 75 years might

"crush whatever incentive defendant has to improve himself while in prison, * * *." The reviewing court noted "the absence of reasons to expect defendant to become rehabilitated," or any background information "which might indicate that he has strong rehabilitative potential." "* * * [N]othing else is offered other than the possibility that this 20-year-old in the years ahead will become rehabilitated. We do not believe that this is enough for us to say that the trial court has abused its discretion." (*Hayes*, at 832.) In *People v. Radford* (1978), 65 Ill. App. 3d 107, 114-115, 382 N.E.2d 486, the court upheld a 30- to 60-year sentence for murder over the defendant's claim that a 30-year minimum sentence for a 60-year-old person was "tantamount to a death penalty." And in *People v. Rogers* (1978), 64 Ill. App. 3d 290, 293-94, 382 N.E.2d 1236, the court affirmed a one- to three-year sentence for burglary where the trial court, in rejecting a plea for probation, made a specific determination that the defendant was not a likely candidate for rehabilitation since numerous attempts at rehabilitation had failed. See also *People v. Hamilton* (1980), 81 Ill. App. 3d 297, 303-04, 401 N.E.2d 318.

■■ In the instant case defendant committed the offenses of attempt robbery and battery less than three months after he had been paroled from the penitentiary on the serious charge of aggravated battery. He also had previous convictions for theft and criminal trespass to a vehicle. In light of the nature of the offenses and defendant's criminal background, we are unable to conclude that the trial court's finding that there was no hope of defendant's rehabilitation was unreasonable or arbitrary. In our judgment the sentences imposed were not in violation of article I, section 11 of the Illinois Constitution. We cannot find as a matter of law that the trial court abused its discretion in imposing these sentences.

## B

■■ Defendant contends that the trial court improperly considered certain facts in determining the sentence. First, defendant refers to the court's comment that the prompt action of the police meant defendant "could not have robbed her of anything more than you tried to do, that is, take the keys from her car * * *." Defendant argues that this comment indicates the trial court's belief that defendant had committed the offense of robbery even though the jury found him not guilty of that charge. Defendant cites *People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265, for the proposition that it is improper for a trial court to impose sentence based at least in part on the belief that the defendant is responsible for an offense of which he was acquitted. We cannot agree with defendant's interpretation of the trial court's comment.

The court said, "You could not have robbed her of anything more than you *tried* to do, that is take the keys from her car, and the endeavor

to take the fur coat off of her back." (Emphasis added.) In our opinion the use of the word "tried" in the context of this statement clearly reflects the trial judge's awareness that defendant had been convicted only of attempt robbery. That the court also specifically referred to "the endeavor to take the fur coat off of her back" does not alter our conclusion. We find nothing in the remarks complained of that would indicate that the trial judge improperly considered defendant to be guilty of robbery.

Defendant also objects to the trial court's observation that although defendant's prior conviction was for aggravated battery, he had been "charged with rape and deviate sexual assault in the aggravated battery." Defendant contends that it was error to utilize the prior charges against defendant rather than relying on the conviction because those charges constitute mere prior arrests or other encounters with the law and so are not available to determine sentence. Again, we believe defendant has misinterpreted the import of the court's comments.

Although prior arrests or charges that do not result in conviction may not be considered in sentencing (*People v. Greer* (1977), 45 Ill. App. 3d 682, 685, 359 N.E.2d 903; *People v. Jackson* (1968), 95 Ill. App. 2d 193, 200, 238 N.E.2d 196), the mere fact that the trial judge has knowledge of other arrests or other inadmissible facts before imposing sentence is not reversible error. (*People v. Handley* (1977), 51 Ill. App. 3d 68, 74, 366 N.E.2d 405; *People v. Wilson* (1973), 11 Ill. App. 3d 693, 696, 297 N.E.2d 277.) We presume that the trial judge has recognized and disregarded incompetent evidence at the presentence hearing unless the record affirmatively discloses the contrary. (*People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 263, 402 N.E.2d 677.) Here the record does not so indicate. We believe that the cases cited by defendant are readily distinguishable.

In *Greer* the trial judge, referring to the defendant's prior conviction for murder which had been reversed and remanded, commented that this was the second time defendant had taken a life in a violent manner. In *People v. Smothers* (1979), 70 Ill. App. 3d 589, 388 N.E.2d 1114, the judge discounted a remote arrest but specifically took later arrests into consideration. In *Jackson* the State was permitted, over objection, to read from defendant's criminal record arrests and other encounters with the law of which defendant was not subsequently convicted. Here defendant did not object to the inclusion of the prior charges in his criminal record. This serves to distinguish those cases cited by defendant where the trial court overruled objections to incompetent testimony. The usual presumption that the court considers only competent evidence was overcome in these cases because "[t]he ruling itself indicates that the court thought the evidence proper." *People v. De Groot* (1968), 108 Ill. App. 2d 1, 11, 247 N.E.2d 177.

In *People v. Kennedy* (1978), 66 Ill. App. 3d 35, 383 N.E.2d 255, the

trial judge, in rejecting probation, indicated that he was considering the arrests and charges as bearing on the likelihood that the defendant may well have committed offenses for which the State had not been able to assemble sufficient evidence to convict. In *People v. Hill* (1973), 14 Ill. App. 3d 20, 302 N.E.2d 373, the court, in denying probation, commented on the fact that defendant might have been charged with a felony instead of a misdemeanor. In all the other cases cited by defendant resentencing hearings were ordered where the appellate court reversed one or more of the convictions on which the trial court had sentenced the defendant and the court could not determine that the trial judge had not taken that conviction into account in imposing sentence on the other charges.

■■ We do not believe that the record in the instant case shows that the trial judge imposing sentence improperly relied on defendant's prior arrest for rape and deviate sexual assault.

## C

Finally, defendant contends that he was improperly sentenced to an extended term of imprisonment. We disagree.

Section 5—5—3.2(b) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)) provides:

"The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 [ch. 38, par. 1005—8—2] upon any offender who was at least 17 years old on the date the crime was committed:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or

(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

Defendant was convicted of attempted robbery. Robbery is a Class 2 felony. (Ill. Rev. Stat. 1977, ch. 38, par. 18—1.) At the time of defendant's offenses, the sentence for attempt to commit a Class 2 felony could not exceed the sentence for a Class 3 felony. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 8—4.)[1] The term of imprisonment for a Class 3 felony is two to five years or five to 10 years if an extended term is warranted by aggravating factors. (Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005—8—1(a)(6) and 1005—8—2(a)(5).) The aggravating factor in the instant

---

[1] Subsequent to the events in the instant case the legislature amended the attempt statute. (Ill. Rev. Stat. 1979, ch. 38, par. 8—4.) The sentence for attempt to commit a Class 2 felony "is the sentence for a Class 3 felony." Par. 8—4(c)(4).

case was defendant's 1976 conviction for aggravated battery, a Class 3 felony. Ill. Rev. Stat. 1975, ch. 38, par. 12—4(d).

Defendant argues that since the inchoate offense of attempt is not classified as a felony, it may not be punished with an extended term. In support of this proposition defendant cites *People v. Foust* (1980), 82 Ill. App. 3d 516, 401 N.E.2d 1329. There the court reversed the defendant's conviction for armed violence where it was based on a conviction for attempt unlawful restraint. Relying upon *People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666, where the supreme court held that a conviction for attempted murder does not require a minimum term of four years, the court in *Foust* observed that the offense of attempt unlawful restraint could have been punished as a felony or as a misdemeanor. Since the armed violence statute specifically requires the commission of "any *felony* defined by Illinois law" (emphasis added), the court said, "we do not feel that an attempt to commit a Class 4 felony is a felony for purposes of the armed violence statute." *Foust*, at 524.

We do not believe that *Foust* is dispositive of the issue defendant raises. In our opinion the reasoning of this case has been called into serious question by the supreme court's recent decision in *People ex rel. Carey v. Scotillo* (1981), 84 Ill. 2d 170, 417 N.E.2d 1356. In that case the court observed that "the offense of attempt is not classified under the Unified Code of Corrections as either a felony or a misdemeanor and, at the time the offenses involved here took place no minimum term of imprisonment was specified in section 8—4 of the Criminal Code of 1961, which defines the offense of attempt [citation]." (84 Ill. 2d 170, 173.) The court held that a judgment of conviction for armed violence predicated on an underlying felony of attempted murder would be improper where the indictment charging the defendants with armed violence alleged, as the underlying felony, not attempted murder but aggravated battery. By implication an armed violence judgment based on attempted murder would have been appropriate had the indictment alleged attempted murder as the underlying felony. If the court had adopted the reasoning in *Foust*, it simply would have held that a conviction for armed violence may never be based on an attempted offense.

■■ Moreover, *Foust* was concerned with the definition of a criminal offense and not with a sentencing statute. The extended term statute, however, deals exclusively with maximum sentences and not crime classification and is therefore applicable in determining the maximum sentence for an attempt. *People v. Williams* (1980), 90 Ill. App. 3d 524, 527-28, 413 N.E.2d 60.

In *Williams* defendant was convicted of attempt murder, attempt armed robbery and aggravated battery and was sentenced to serve extended terms on both attempt convictions. On appeal defendant argued that since attempts are unclassified offenses (*Moore*) and the

extended term section (5—8—2) specifically applies to murder and the classified offenses listed therein, an extended term cannot be imposed for a conviction of the unclassified offense of attempt. The court rejected this argument, stating that "[s]ince the attempt statute prescribes that the sentence for an attempt shall not exceed the maximum sentence for the particular class of felony listed, it necessarily includes the provisions for an extended term in determining the maximum." *Williams*, at 527-28.

Defendant purports to distinguish *Williams* on several grounds. First, he notes that in *Williams* both aggravating factors under section 5—5—3.2 were present. Defendant comments that the extended term "could readily be upheld under subsection (b)(2) by examining the viciousness of the crime without regard to comparing classes of felonies under subsection (b)(1)." According to defendant, "this naturally renders review of the applicability to attempts of subsection (b)(1) in *Williams* mere dicta." Defendant, however, has overlooked the authority of *People v. Sally* (1980), 84 Ill. App. 3d 167, 170, 405 N.E.2d 407, cited in *Williams*. In *Sally* the court upheld the imposition of an extended term for attempt escape where the sole aggravating factor was, as in the case at bar, a prior felony conviction.

Since the extended term in *Williams* was not predicated exclusively on the aggravating factors set forth in subsection (b)(1), defendant also suggests that *Williams* need not have been concerned with whether a defendant convicted of attempt robbery has been "convicted of any felony" as that term is used in that subsection. Yet, as defendant acknowledges, the same language appears in both subsections of the extended term statute. Nevertheless, defendant maintains that *Williams* failed to make the threshold determination requisite to the imposition of an extended term—that a defendant has been convicted of a "felony." We cannot concur.

■■ Although neither *Williams* nor *Sally* explicitly states that an attempt to commit a felony may be considered a "felony" for purposes of the extended-term statute, clearly that is implicit in both opinions. (See also *People v. Clifford* (1980), 88 Ill. App. 3d 305, 306-07, 410 N.E.2d 537.) At the time defendant committed the offense of attempt robbery, an attempt could be punished with a misdemeanor sentence. (*Moore*; *Scotillo*.) That does not mean, however, that it could not also be punished with a felony sentence. Defendant does not dispute this. Since an attempt may be punished as a felony, we find no statutory impediment to considering attempts as felonies for purposes of the extended-term statute.

For the foregoing reasons we affirm the judgments and sentences of the circuit court of Cook County.

Affirmed.

STAMOS and DOWNING, JJ., concur.