THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELIJAH PARKER *et al.*, Defendants-Appellants.

First District (3rd Division) Nos. 1—85—3655, 1—85—3711 cons.

Opinion filed December 13, 1989.—Rehearing denied January 29, 1990.

Michael J. Pelletier and David M. Goldwin, both of State Appellate Defender's Office, of Chicago, for appellant Elijah Parker.

Randolph N. Stone, Public Defender, of Chicago (Ruth A. McBeth, Assistant Public Defender, of counsel), for appellants Charles Maddox and Lee White.

Cecil A. Partee, State's Attorney, of Chicago (Ado L. Rugai, Special Assistant State's Attorney, and Inge Fryklund and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendants, Elijah Parker, Charles Maddox and Lee White, were charged by indictment with multiple counts of armed robbery stemming from the robbery of a Jewel Food Store in Blue Island, Illinois. Parker and White were tried by a jury and convicted on all counts. Maddox chose a bench trial. He too was convicted on all counts. Maddox and White received concurrent sentences of 18 years' imprisonment on each count. Parker received concurrent sentences of 30 years' imprisonment on each count. All defendants appeal their convictions. Defendant White also appeals his sentence. The appeals have been consolidated for purposes of review.

All defendants filed various pretrial motions. Parker's motions included a motion to quash arrest and a motion to suppress identifications. Maddox' motions included a motion to sever his case from Parker's and White's cases. The trial court denied all of the motions. However, it did grant White trial counsel separate from that of Parker and Maddox.

On appeal, defendant Parker first contends that the trial court erred in denying his motion to quash his arrest because he was arrested without probable cause.

■ We need not dwell at length upon this issue. We have reviewed the evidence of the circumstances of defendant Parker's arrest and conclude that he was arrested without probable cause. Therefore, the lineup identifications of Parker obtained as a result of that arrest should have been suppressed as "fruit of the poisonous tree." These determinations notwithstanding, the error in admitting that evidence at trial does not require a reversal of his convictions unless we also find that the remaining competent and admissible evidence against him was insufficient to prove his participation in the robbery beyond a reasonable doubt. (See People v. Spicer (1987), 163 Ill. App. 3d 81, 516 N.E.2d 491.)[1] However, we do not so find.

At trial, John Burk testified that, at approximately 2:45 p.m. on

---

[1]That evidence included the in-court identifications of Parker by the State's witnesses, which had a basis independent of the illegal arrest, i.e., the opportunity to observe defendant during the robbery. See People v. Maldonado (1981), 101 Ill. App. 3d 948, 428 N.E.2d 1087.

July 10, 1984, he was cashing a check at the service desk of the Jewel Food Store in Blue Island, Illinois, when defendant White, who had been standing behind Burk, pointed a gun at the store manager, the only person behind the desk, and said, "This is a stick-up," and he then jumped over the counter. White, who was wearing military clothing, then demanded money from the manager, who proceeded to load it into plastic bags. At this time, defendant Maddox was parading in front of the service desk and checkout counters holding two guns over his head and threatening to shoot anyone who moved. Maddox then approached the service desk to assist White with the bags of money, and Burk noticed defendant Parker standing by the store's "in and out" doors. Parker, who had no gun, had "an overthrow shirt or something on." Parker left the store first, followed by White and Maddox.

LeDora McDonald testified that she was working at the Jewel store on July 10, 1984, at about 2:45 p.m., when she heard someone say, "[H]ey" while she was "checking" and giving a customer his change. She turned around and saw someone holding a gun. Asked what this person said or did after getting her attention, McDonald responded, "He told me that it was going to be a stickup, his buddy would let everybody know in a few minutes, start putting my money in the bag and I did that." While McDonald was putting money into the bag, this person's "buddy let us know what was going on." After putting the money into his bag, "this person" moved over to get the money from the girl at the next counter and then told a bagger "to move on down to get the rest of the money from the rest of the people while he moved over and started making the people come in the door." After stating that the person who pulled a gun and had her empty her drawer of money into his bag was in court, McDonald described him as wearing "a black coat, white shirt and mixed tie." The record reflects that this was defendant Parker. After stating that "the man who was out front" with two guns was also in court, McDonald described him as wearing a black jacket and gray pants. The record reflects that this was defendant Maddox. McDonald further testified that Parker was wearing a shirt at the time of the robbery and had his hair done in French braids.

Defendant Parker contends that he was not proved guilty of armed robbery beyond a reasonable doubt. Specifically, he argues that neither Burk's nor McDonald's testimony conclusively established that Parker had any role in the armed robbery but that Burk's testimony merely established his presence at the scene, which was not sufficient for a conviction. *People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444.

■ We disagree. Very recently, our supreme court stated:

" '[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be \*\*\* to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, *the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* [Citation.] This familiar standard gives full play to the responsibility of the trier of fact \*\*\* to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences \*\*\*. Once a defendant has been found guilty \*\*\*, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence is to be considered in the light most favorable to the prosecution.* The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee \*\*\* due process of law.' " (Emphasis added.) (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 453, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573-74, 99 S. Ct. 2781, 2788-89.)

Applying this very deferential standard here, we are compelled to reject defendant's arguments.

Defendant Parker asserts that McDonald's identification of him was vague and uncertain and thus inadequate to convict him. (*People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444.) In so arguing, he focuses on her response, "Yes, I think so," when asked on direct examination whether the individual who pulled a gun on her and had her empty her drawer into a bag was in court. He also cites part of her cross-examination regarding her in-court identification of him, which went like this:

"Q. You were asked by the Prosecutor to identify that individual that came by \*\*\* the counter. You said, 'I think so.' There is some doubt in your mind \*\*\* as to who exactly you identified as the perpetrator of that crime \*\*\*?

A. No doubt.

Q. There is no doubt?

A. No doubt.

Q. So, when you say, 'I think so,' when asked \*\*\* if you can identify that man, then you were mistaken, is that correct?

[Prosecutor]: Objection, your Honor.

\* \* \*

Q. When you said, 'I think so,' you did say, 'I think so,' didn't you?

A. I really don't know, but I mean the guy is here."

■ In narrowly focusing upon McDonald's response, "I think so," when asked if the robber who accosted her was in court, defendant Parker ignores that she immediately thereafter and without hesitation made an in-court identification of him by describing what he was wearing in the courtroom. In citing the above-quoted cross-examination of McDonald, we believe defendant Parker seeks to take advantage of his trial counsel's attempt to twist the meaning of McDonald's "No doubt" responses to his cross-examination. Moreover, McDonald's response, "I really don't know," cannot be construed to mean that she did not know the identity of the robber who accosted her. Any doubt in that regard is removed by her immediately following statement that "the guy is here." Considering McDonald's identification testimony in the light most favorable to the State, we cannot say that any rational juror would have found it so vague and uncertain as to create a reasonable doubt of defendant's participation in the robbery.

Parker also cites the inconsistency between Burk's and McDonald's testimony regarding his actions during the robbery and whether he possessed a gun at that time. He further cites the inconsistency between their testimony that he was wearing a shirt during the robbery and that of the Blue Island police officers that he was not wearing a shirt when arrested shortly thereafter, pointing out that the police did not find a shirt either at the scene of the robbery or the scene of his arrest. Citing *People v. Hister* (1975), 60 Ill. 2d 567, 328 N.E.2d 531, he concludes that these inconsistencies created a reasonable doubt of his guilt.

■ Considering the inconsistencies in Burk's and McDonald's testimony in the light most favorable to the State, we conclude that, notwithstanding them, a rational jury could have found defendant guilty of the essential elements of armed robbery beyond a reasonable doubt. Specifically, we cannot conclude that a rational jury was compelled to accept Burk's testimony that defendant Parker had no weapon and merely stood by the store's front doors over that of McDonald that he had a gun and actively participated in the robbery. As *Young* and *Jackson* note, it is the function of the jury, not a court of review, to resolve evidentiary conflicts and to weigh the evidence.

The alleged consistency between McDonald's and Burk's testimony, on the one hand, that he wore a shirt during the robbery and

that of the Blue Island police officers, on the other hand, that he was shirtless when arrested and that they found no shirt either at the scene of the arrest or robbery suffers the same fate as the foregoing inconsistencies.

Parenthetically, we note that this testimony presented no real inconsistency. Unlike Burk and McDonald, no police officer observed defendant Parker during the actual robbery. Moreover, Officer Gawrysiak, who saw the suspects fleeing almost immediately *thereafter*, never identified either of the two suspects, whose clothes he was able to describe over the radio, as defendant Parker. In addition, the jury could have reasonably inferred from Burk's and McDonald's testimony that Parker left the store before White and Maddox, that he removed his shirt and that the police simply were unable to find it. However, even assuming that Burk and McDonald were mistaken about a shirt, a rational jury could still find their positive in-court identifications of Parker to be proof beyond a reasonable doubt of his participation in the robbery.

Defendant Parker next contends that, even if there was proof beyond a reasonable doubt of his guilt of the charges of armed robbery of McDonald and the cashier next to her, Rhonda Servant, there was insufficient proof of the charges of armed robbery of two other cashiers, Wilma Lambert and Barbara Horvath, on duty at the time of the robbery. With respect to these charges, McDonald testified that Lambert and Horvath were present during the robbery and that Parker sent a bagger to get the money from the "rest of the people" after personally taking money from McDonald and Servant. Moreover, Ronald Karpowicz, the assistant store manager on duty during the robbery, testified that upon checking the cash registers after the robbery he found that they were all "basically" out of money and that "just about" everything had been taken from them. Defendant Parker argues that this testimony was insufficient to prove the armed robbery of Lambert and Horvath. We agree.

■ The State's only relevant response is that Karpowicz's testimony allowed a logical and reasonable inference that money was taken from all the cashiers because "this was a Friday afternoon during the busiest time of day." This argument completely ignores what was a *sine qua non* of proof of all the robbery offenses charged in this case, *i.e.*, proof that there was money in the presence of the store's assistant store manager and cashiers *before* the robbery. That essential element of proof was satisfied as to the assistant store manager and cashiers McDonald and Servant. It was not satisfied as to cashiers Lambert and Horvath.

The inference upon which the State seeks to justify defendant's convictions of robbery from Lambert and Horvath is not based on any record evidence other than perhaps McDonald's testimony that there were 100 people in the store at the time of the robbery. However, the inference drawn by the State that there must have been money taken from Lambert and Horvath is a *non sequitur* simply from that fact and the fact that the registers were out of money after the robbery. The relative ease with which the State could have met the requirement of proof that money was taken from Lambert and Horvath makes its failure to do so that much more egregious.

■ This conclusion notwithstanding, McDonald's testimony that Parker ordered her bagger to get the money from "the rest of the people" does not, as he implies, create a reasonable doubt of guilt of armed robbery from Lambert and Horvath. A person cannot escape legal culpability for robbery by using another under a threat of force or violence as the immediate or remote means or tool to commit the actual taking of property from the person or presence of another who is also threatened with force or violence.

Defendant Parker lastly contends that Officer Douglas Hoglund was improperly allowed to testify that defendant was driving a stolen car at the time of his arrest.

■ Having found that defendant Parker was arrested without probable cause, evidence that he was driving a stolen vehicle at the time thereof "constituted fruit of the poisonous tree." Unlike the eyewitnesses' testimony of defendant's participation in, and presence at the scene of, the armed robbery and their in-court identifications of him, there was no basis for admission of this testimony independent of his illegal arrest. The State asserts that that evidence was admissible to show the circumstances of defendant's arrest as it formed a continuous narrative of the context of the arrest. Notwithstanding the general validity of that rule, we do not believe that it is applicable where, as here, an arrest was made illegally. However, we do not believe the error in admitting this evidence requires reversal of defendant's convictions. Where the evidence of guilt is overwhelming, any error in admitting evidence of other crimes committed by a defendant is harmless beyond a reasonable doubt. (*People v. Teffertiller* (1987), 158 Ill. App. 3d 72, 510 N.E.2d 1322; *In re L.F.* (1983), 119 Ill. App. 3d 406, 456 N.E.2d 646.) That we believe to be the case here.

In their own appeal, defendants White and Maddox first contend that they were denied a fair trial by improper remarks during the State's opening statement which implied that defendants' indictment was proof of their guilt, placed the prosecutor's professional and offi-

cial prestige before the jury and misled the jury. Defendant White also asserts that the prosecutor improperly impugned his credibility in closing argument by calling him a murderer (in apparent confusion with defendant Parker, who had a prior conviction for murder). Defendants further assert that the prosecutor's statement that defense counsel "had an answer for everything" was an improper accusation of fraud which could only antagonize the jury.

■ We find that defendants waived any error in the prosecutor's allegedly improper opening statements and closing arguments by failing to object at that time and by failing to raise the errors with specificity in their post-trial motions. (*People v. Sanders* (1988), 168 Ill. App. 3d 295, 301, 522 N.E.2d 715; *People v. Ammons* (1983), 120 Ill. App. 3d 855, 859-60, 458 N.E.2d 1031.) Moreover, even assuming the impropriety of such statements (see *People v. Bitakis* (1972), 8 Ill. App. 3d 103, 106, 289 N.E.2d 256) and arguments (see *People v. Monroe* (1977), 66 Ill. 2d 317, 324, 362 N.E.2d 295), we do not believe that they constituted plain error. We find the State's evidence of defendants White's and Maddox' participation in the robbery of the Jewel Food Store, especially that relating to the circumstances of their capture soon after the robbery, overwhelming. As such, defendants could not have suffered any substantial prejudice from the prosecutor's remarks. (See, *e.g.*, *People v. Trotter* (1988), 178 Ill. App. 3d 292, 300, 533 N.E.2d 89; *People v. Guyon* (1983), 117 Ill. App. 3d 522, 537, 453 N.E.2d 849.) The errors were harmless beyond a reasonable doubt.

Defendants White and Maddox next contend that the trial court abused its discretion when it refused to sever the charges stemming from the robbery of the Jewel Food Store from the charge stemming from the robbery of Pamela Swierczewski allegedly committed by defendants White and Maddox after fleeing the store.

Swierczewski testified that she was unloading her car near her home at 15520 Vincennes in Blue Island at about 3 p.m. on July 10, 1984, when she saw three black men running down the alley toward her. The men came up to her and one, who she identified as defendant Maddox, pointed a gun at her and said, "Lady, give me your keys and I won't hurt you." After Swierczewski handed him her keys, two of the men got in her car and the third, who could not get in because the passenger side seat was broken, ran off.

■ No error relative to a denial of the alleged motion for severance is properly before us on appeal because defendants White and Maddox made no motion for severance in the trial court on the ground asserted on appeal. Rather, the record reveals that a motion for severance was made on behalf of defendants Parker and Maddox

on the grounds that defendant White had made statements incriminating them in the robbery and that there was a difference in the charges against Parker and Maddox, *i.e.*, Parker was not charged with the robbery of Swierczewski. This motion was granted to the extent that White was granted separate trial counsel. Moreover, even assuming that the motion for severance expressly made only on behalf of defendants Maddox and Parker was also made on behalf of defendant White, the post-trial motions of defendants Maddox and White conclusively reveal that the motion was for separate trials for each defendant, not separate trials of the store robbery charges and the charge of robbery of Swierczewski. Having made no motion to sever the charge of robbery of Swierczewski, defendants White and Maddox obviously cannot now contend that the denial of such a motion was an abuse of discretion.

Defendant White lastly contends that the trial court abused its discretion because it sentenced him without considering his rehabilitative potential.

■■■ We agree with defendant that a trial court has a duty to actually consider a defendant's rehabilitative potential. "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) This constitutional mandate requires that the sentencing court consider *and* act on the goal of rehabilitation as an objective of its sentence. (*People v. Gibbs* (1977), 49 Ill. App. 3d 644, 648-49, 364 N.E.2d 491.) Finally, while rehabilitative potential is entitled to no greater weight than the seriousness of an offense (*People v. Alcazar* (1988), 173 Ill. App. 3d 344, 356, 527 N.E.2d 325), the record must nonetheless indicate that the court considered both sentencing elements (*People v. Morando* (1988), 169 Ill. App. 3d 716, 726, 523 N.E.2d 1061).

However, we disagree with defendant that, for a record to reflect actual consideration of rehabilitative potential, a trial court must expressly indicate its consideration thereof *in haec verba*. The requirement that a trial court actually consider rehabilitative potential has not been so construed.

Rather, a trial court's examination of a presentence investigation report which recites several mitigating factors is "in itself, a basis for finding that defendant's [rehabilitative potential] was considered." (*People v. Shumate* (1981), 94 Ill. App. 3d 478, 485, 419 N.E.2d 36; *People v. Wilson* (1985), 138 Ill. App. 3d 513, 527, 485 N.E.2d 1264.) Similarly, the requirement of section 9—1(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(c)) that a jury considering

the death penalty consider any mitigating factors relevant to the imposition of that penalty is sufficient to satisfy the mandate of article I, section 11. (*People v. Gaines* (1981), 88 Ill. 2d 342, 381-82, 430 N.E.2d 1046, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285; *People v. Free* (1983), 94 Ill. 2d 378, 420-21, 447 N.E.2d 218, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) Applying this case law here, we find that the trial court actually considered defendant's rehabilitative potential.

 Defendant White asserts that, while the trial court stated its consideration of the fact that the instant convictions were his first felony convictions, it did not consider his youth or that he had only one prior misdemeanor conviction. However, defendants' birthdate and age were both noted in the presentence investigation report filed with the court. Chicago and State police documents, indicating that defendant had only a 1978 misdemeanor theft conviction, were appended to the report. The trial court expressly indicated its consideration of the presentence report before sentencing defendant, albeit not immediately before doing so. Since the report contained the factors relevant to rehabilitative potential which defendant cites on appeal, the trial court must be held to have considered that potential under *Shumate* and *Wilson.*

In addition, the State conceded that defendant White met one of the statutory mitigating factors in that he had no history of prior delinquency or criminal activity other than the misdemeanor theft conviction and had led a law-abiding life for a substantial period of time before the commission of the armed robbery. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1(a)(7).) Defense counsel also noted that the theft conviction was defendant's only prior conviction and argued that there was no reason to believe, based on that record, that he would be similarly charged again. Evidence of defendant's satisfaction of the statutory mitigating factor, which was conceded by the State and which was argued by defense counsel, also constituted evidence of rehabilitative potential under the foregoing cases. Having been put before the trial court, we must presume that it took this evidence into consideration in sentencing defendant. See *People v. Smith* (1980), 91 Ill. App. 3d 438, 451-52, 414 N.E.2d 1281, *rev'd on other grounds* (1982), 93 Ill. 2d 179, 442 N.E.2d 1325, *cert. denied* (1983), 461 U.S. 937, 77 L. Ed. 2d 312, 103 S. Ct. 2107.

In this regard, we must disagree with the holding in *People v. La Pointe* (1980), 85 Ill. App. 3d 215, 223, 407 N.E.2d 196, *rev'd on other grounds* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, and with *Smith* to the extent that it reaffirms the *La Pointe* holding, that in order to prop-

erly consider rehabilitative potential, a trial court must weigh mitigating factors "in terms of" the goal of rehabilitation.

■■ The mandate of article I, section 11, obviously extends to the legislature. We must therefore presume that the legislature took that mandate into consideration[2] in establishing the statutory mitigating factors (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2) and aggravating factors (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1). Since the mitigating factors, like rehabilitative potential, militate in favor of less severe punishment, it is reasonable to presume that the legislature concluded that these factors indicated rehabilitative potential which increased as the number of such factors applicable to a defendant increased. The legislature has thus established a statutory scheme whereby sentencing courts implicitly consider rehabilitative potential when they consider mitigating factors in sentencing defendants. As such, they need not reweigh mitigating factors "in terms of determining rehabilitative potential." See *People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218; *People v. Gaines* (1982), 88 Ill. 2d 342, 430 N.E.2d 1046; *People v. Wilson* (1985), 138 Ill. App. 3d 513, 485 N.E.2d 1264; *People v. Shumate* (1981), 94 Ill. App. 3d 478, 419 N.E.2d 36.

For the foregoing reasons, we: (1) affirm the convictions of defendants Maddox and White and the sentence of defendant White; (2) affirm defendant Parker's convictions except for those arising from the alleged robberies of Wilma Lambert and Barbara Horvath, which we vacate; and (3) vacate the concurrent sentences imposed thereon.

Affirmed in part; vacated in part.

RIZZI and CERDA, JJ., concur.

[2]See also Ill. Rev. Stat. 1985, ch. 38, par. 1001—1—2 (providing that purposes of the Unified Code of Corrections are, *inter alia*, to prescribe sanctions proportionate to the seriousness of offenses, to permit the recognition of differences in rehabilitative potential and to restore offenders to useful citizenship).