THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM W. JONES (Impleaded), Defendant-Appellant.

First District (Fifth Division)    No. 78-1894

Opinion filed February 8, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Mark X. Van Cura, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

After a bench trial, defendant was found guilty of armed robbery and sentenced to a prison term of six to 10 years. On appeal, he contends: (1) he was not proven guilty beyond a reasonable doubt; (2) he was denied due process and the right to confront witnesses against him when the trial court permitted the prosecutor to insinuate facts unsupported by the evidence; (3) the trial court erred in allowing the prosecution to introduce certain inadmissible "hearsay" into evidence; and (4) the trial court made certain errors during the sentencing hearing which require a new hearing. We affirm.

OPINION

Defendant contends that the State failed to sustain its burden of proving him guilty beyond a reasonable doubt because the testimony of the complainant was contrary to human experience and conflicted with the testimony of two police officers. The complainant, Vernell Harris, testified that at approximately 11:15 p.m. on October 24, 1975, he was getting ready to ring a doorbell in the lighted hallway of a building at 4315 South King Drive when the front door opened and a man entered the hallway, stuck a .38-caliber short barrel gun into his face, and announced a "stickup." Complainant stated that he could see the face of the man, whom he identified as defendant, because the hallway was lighted and because the man was standing two or three feet away from him for about one or two minutes. He gave defendant his wallet which contained between $103 and $150 and, after a while, defendant turned and walked out of the building.

Complainant testified that he waited for a few seconds in the hallway and watched defendant get into the passenger side of a parked car which was already occupied by a woman, Cheryl Newsome. He stated that he did not see defendant drop or throw anything while walking to the car. After Newsome started the car, complainant came out of the hallway and got into his own car. By the time he started his car, defendant's car was stopped at a traffic light at 43rd Street and King Drive. Complainant pulled behind defendant's car at the light and followed the car as it turned eastward down 43rd Street. Defendant's car did not proceed at a very fast pace down 43rd Street and complainant was able to keep about "another

car length" behind the car. While following, he did not notice either person in defendant's car looking back at him. He said that he never lost sight of defendant's car until it pulled into a gas station at 43rd Street and Cottage Grove, which was about six blocks east of King Drive, and that he never saw anything being thrown out the window until the car reached the station.

Complainant testified that he saw two uniformed police officers in a patrol wagon at 43rd and Cottage Grove and told them that he had been robbed by a man who was parked in a car at the gas station on that corner. He also related this information to two plainclothes officers who had joined the patrol wagon and pointed out defendant's car to them. The officers then went to the gas station and the plainclothes officers proceeded to block the front of defendant's car with their car while the uniformed officers blocked the rear with their patrol wagon. Complainant also went to the station and got out of his car about 20 feet from defendant's car. He said that he saw Newsome throw a wallet out of the car but also stated that he did not notice her rolling down her window until later. He went to pick up the wallet, but one of the uniformed officers retrieved it first. In the meantime, defendant was struggling in the car with the plainclothes officers. They were attempting to take a gun from defendant. Complainant said the gun was the one used during the robbery. Eventually, the officers were able to handcuff defendant and seize the gun.

Complainant testified that his wallet was returned to him at the police station. However, the wallet did not contain his pay stub, identification card, social security card, or the money. All of these items, aside from the money, had been found earlier scattered in the back seat area of defendant's car and had been returned to him. The money was never recovered.

Officer Robert McKnabb testified that he was "working" a plainclothes tactical car near 43rd Street and Ellis, about two blocks from Cottage Grove, when complainant told him about the armed robbery and the location of defendant. He could not see the gas station from where he was located but complainant, who appeared to be calm all during the conversation, gave him a description of defendant's car.

When McKnabb arrived at the gas station, he approached the passenger side of defendant's car from the rear while the patrol wagon blocked the exit directly in front of defendant's car. After he identified himself to defendant as a police officer and ordered him out of the car, defendant reached over and put the car into gear. The car started to move forward, but McKnabb was able to keep pace and eventually was able to open the door and force defendant to drop his .38-caliber gun and to get out of the car. He said that force was necessary because defendant was

struggling with him. McKnabb recovered the gun from inside the car and later that evening inventoried the gun. The inventory slip, which McKnabb identified as the one which he filled out and signed, was admitted into evidence over defense objections. When asked if he knew what happened to the gun, he stated that the gun had been destroyed. He also testified that personal identification cards were recovered from the back seat of defendant's car and a billfold was recovered from the ground, five or six feet from the driver's side of the car. He never recovered any money and said that he searched the trunk of defendant's car.

Both sides stipulated that if Officer Robert Swiderski, McKnabb's partner, were called to testify he would testify as he had at a preliminary hearing that complainant's wallet was found on the front seat of defendant's car somewhere between where Newsome and defendant had been sitting.

■■ In reviewing the sufficiency of the evidence in this case, we must bear in mind that:

"* * * it is *always* the duty of this court to examine the evidence in a criminal case, and if it is so improbable or unsatisfactory as to raise a *serious doubt* of defendant's guilt the conviction will be reversed. [Citations.] A judgment of conviction can be sustained *only on credible evidence* which removes all reasonable doubt of the guilt of the defendant, and it is the insufficiency of the People's evidence which creates such doubt. If a conviction is to be sustained, it must rest on the strength of the People's case and not on the weakness of the defendant's case. [Citations.] The foregoing principle of law is a corollary of the presumption of innocence to which a defendant in a criminal case is entitled, and to the rule that the People have the burden of establishing the defendant's guilt beyond a reasonable doubt." (Emphasis added.) (*People v. Coulson* (1958), 13 Ill. 2d 290, 296, 149 N.E.2d 96, 99.)

Guilt beyond a reasonable doubt may be based solely on the testimony of the complainant, if his testimony is positive and credible. (*People v. Mays* (1979), 74 Ill. App. 3d 145, 392 N.E.2d 106.) A complainant's testimony may be considered positive and credible even if it conflicts with the testimony of other witnesses. (*People v. Mayfield* (1979), 72 Ill. App. 3d 669, 390 N.E.2d 1315.) Although the question of credibility of a complainant is normally for the trier of fact, we will not hesitate to reverse the fact finder's determination if we find the complainant's testimony is contrary to the laws of nature or universal human experience. (*People v. Dawson* (1961), 22 Ill. 2d 260, 174 N.E.2d 817.) Despite the fact that complainant's testimony conflicted with McKnabb's testimony and Swiderski's stipulated testimony in some minor respects, we find that

complainant's testimony is both positive and credible in all material respects and overwhelmingly supports defendant's conviction.

The evidence in this case will not permit any question to be raised concerning complainant's ability to view defendant both during and after the crime. Complainant testified that during the commission of the crime he stood looking at defendant and his gun at a distance of two or three feet for one or two minutes in a lighted hallway. After the crime, he followed defendant to a gas station within blocks of the crime, and within minutes, was able to either point out defendant's car or give a description of the car to the police. When the police went to apprehend defendant, they struggled over a gun which complainant identified as the gun used in the armed robbery. After the police had subdued defendant, they recovered complainant's identification cards from the back seat area of defendant's car and complainant's wallet either just outside the driver's side of the car or on the front seat. Officer McKnabb, who was one of the arresting officers, corroborated much of this testimony.

We disagree with defendant's claim that the testimony of complainant was so "improbable and contrary to human experience as to be an insufficient basis to convict." Defendant argues that there were several improbabilities in complainant's testimony, but we will consider only those which have some merit. First, defendant argues that complainant's testimony that he made no effort to evade the police or to flee from complainant following the robbery was improbable and contrary to human experience. However, we do not find this so improbable in light of the fact that there was no testimony that defendant knew that (1) complainant had a car, (2) complainant was following him, or (3) it was reasonably possible for him to flee the police. Instead, we believe that defendant's actions were consistent with an attempt not to call attention to himself and a general concession that with police present at the gas station, he could not escape. Second, defendant argues that complainant's testimony as to the manner in which his property made its way into defendant's car is to be disbelieved because the money which he claimed was taken from him was never recovered. Although no money was ever recovered, we believe that the evidence offers a possible explanation for this failure to recover the money. Cheryl Newsome testified that after she had arrived in the gas station but before the police arrived, she left the car and went to a candy machine. During the time she was away, she could have disposed of the money. Moreover, even if we were to find that this does not afford an adequate explanation for the missing money, we would still not find complainant's testimony to be improbable and contrary to human experience because of the rather incriminating testimony that the other fruits of the crime, the identification cards, were found in the back seat area of defendant's car.

Although we are not unaware of defendant's explanation that a woman named Red had dropped "something" in his car, after talking with complainant, we do not think that this explanation rings true, particularly in light of the fact that defendant never claimed that he attempted to find out exactly what had been dropped in the car. Third, defendant argues that complainant's testimony that Newsome threw the wallet out of the car is subject to suspicion, particularly because he also testified that she did not roll down her window until defendant had been removed from the car. We do not believe that this testimony renders complainant's testimony suspect since it is possible that Newsome opened the door and threw the wallet out of the car. Complainant never testified that Newsome threw the wallet out of the window. He only testified that he never saw *anything* thrown out of the window except at the filling station and that Newsome threw the wallet out of the car. Since there was no evidence that Newsome did not open the car door at the time when she threw the wallet out of the car,[1] we cannot say that complainant's testimony with respect to the wallet is suspect.

All of the cases cited by defendant as support for his claim that complainant's testimony was improbable and contrary to human experience are readily distinguishable from the case we have before us. (See, *e.g., People v. Coulson* (1958), 13 Ill. 2d 290, 149 N.E.2d 96; *People v. Sowers* (1976), 36 Ill. App. 3d 599, 344 N.E.2d 800; *People v. Mixter* (1972), 8 Ill. App. 3d 531, 290 N.E.2d 705.) Each of the cases involved rather incredible fact patterns, such as an alleged rapist accompanying his victim into a police station in search of directions (*People v. Mixter*), and considerable major inconsistencies and contradictions in the testimony offered.

In the instant case we have no such incredible fact pattern and the contradictions are only minor. For example, complainant and McKnabb's testimony conflict as to the location of the police when they first spoke to complainant, the method used by complainant in informing the police of the whereabouts of defendant, and the positions of the respective police vehicles when they pulled into the gas station. Also, complainant and McKnabb's testimony conflict with Swiderski's stipulated testimony as to where complainant's wallet was found. Although these conflicts in testimony are rather pronounced, we view them as no more than minor matters of credibility properly resolvable by the trier of fact.

Defendant next contends that his rights of due process and confrontation of witnesses against him were denied when the prosecutor

[1] At one point in his testimony, complainant did state that he did not see Newsome open the door, but this was with reference to the time just prior to her arrest, not with reference to the time when the wallet was thrown from the car.

was permitted to insinuate in his cross-examination of defendant that he was in possession of a stolen vehicle at the time of his arrest. In allowing extensive questioning on this subject, the trial court noted that it was permitting such questioning because it was "material" and "relevant." However, despite the intensive questioning, it was never established that the car was in fact stolen. Though we find this line of questioning to be clearly improper because there was no evidentiary basis for it, the error was harmless beyond a reasonable doubt in light of both the prosecution's failure to establish that the car was stolen and also the overwhelming evidence of defendant's guilt in this case.

Defendant contends that the trial court admitted inadmissible hearsay evidence when it admitted McKnabb's inventory slip and his testimony regarding the destruction of the gun into evidence. He claims that admission of such evidence permitted the State to bolster complainant's testimony that he was robbed at gunpoint and McKnabb's testimony that he recovered a gun while it deprived the defense of any opportunity to confront complainant with the weapon in order to determine if that weapon was the actual weapon used in the crime. Also, he claims that by admission of that evidence, the State was able to offset any negative inference which might arise by virtue of the State's failure to produce the gun. Although we agree that the trial court erred in admitting this evidence, we find that defendant was not prejudiced by its admission.

McKnabb's testimony that the gun had been destroyed was inadmissible hearsay because he did not state that he spoke from personal knowledge. (*People v. McClinton* (1978), 59 Ill. App. 3d 168, 375 N.E.2d 1342.) Without some such qualification, his testimony represents an out-of-court statement which is asserted to prove that the gun was in fact destroyed. Such a statement is hearsay, and since it does not fall into any of the recognized exceptions to the hearsay rule it should not have been admitted. The inventory slip, on the other hand, should not have been admitted into evidence because there was no competent evidence which established that the gun had in fact been destroyed. Unlike the case of *People v. McShan* (1975), 32 Ill. App. 3d 1068, 337 N.E.2d 263, where an inventory slip was admitted into evidence after it had been established that the gun had been destroyed pursuant to court order, there was no evidence in this case that the gun had been destroyed by court order. In fact, the slip itself would seem to negate such a possibility since the slip indicates that the gun should be held for investigation or evidence. Without some competent evidence that the gun had been destroyed, thus necessitating admission of the inventory slip, we find that the slip should not have been admitted. In light of this finding, we need not respond to defendant's claim that the slip was hearsay, although we note that the

language of section 115—5(c)(2) of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 115—5(c)(2)) would seem to be broad enough to prohibit the admission of the slip on hearsay grounds.

■■ Our finding that the admission of this evidence was not prejudicial is based on the overwhelming evidence in this case. In particular, we note that the testimony in this case makes it most likely that the slip represented the gun which was used during the commission of the crime. As earlier noted, complainant had a good opportunity to view the gun and he identified it as a .38-caliber short barrel gun. He stated that he watched or followed defendant from the time the crime occurred until defendant reached the gas station and did not see defendant throw anything away. He stated that a while later, when defendant was struggling with the police officers, he saw them struggling over the gun which was used in the crime. McKnabb corroborated the existence of the gun and also corroborated the fact that it was a .38-caliber gun. He also claimed that he inventoried the gun and filled out and received an inventory slip for it. At trial, he identified the slip and his signature on the slip. Because of all this testimony, we believe that it was likely that the slip represented the gun which McKnabb recovered. Also, even without the slip, the State's evidence was sufficient to prove that a gun was used in the commission of the crime. We, thus, find that no error of a prejudicial nature was committed by the court on this contention.

■■ Defendant's last contention is that the trial court committed errors in the sentencing hearing which require a new hearing. First, he claims that the court erred in considering defendant's prior arrests which did not result in convictions in determining the sentence to be imposed on defendant. At the hearing, the court stated:

> "In regard to this particular matter this Court has extensively reviewed the Defendant's record and find that he was on Probation or currently is on Probation for Grand Theft—auto theft that has an extensive record though only two convictions that the offense of which he stands convicted of is one in which he used a dangerous weapon engaged in dangerous behavior and in fact to a great degree remained arrogant with the police."

We believe that this statement is too unclear to represent a "definite indication" that the trial court considered the prior arrests in rendering sentence. (*People v. Perry* (1976), 38 Ill. App. 3d 81, 347 N.E.2d 340.) Certainly, defendant's prior record of convictions, his violation of probation by committing the present crime, and the seriousness of the present crime formed a proper and sufficient basis for the six- to 10-year sentence which he received from the court. In light of this background and without some definite indication that the trial court considered the prior arrests in determining sentence (see, *e.g., People v. Perry; People v.*

*Jackson* (1968), 95 Ill. App. 2d 193, 238 N.E.2d 196), we cannot say that a new sentencing hearing is required on this ground.

Secondly, defendant claims that the trial court erred when it failed to explain to defendant the differences between sentencing under the law in effect at the time of the commission of the offense (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1) and the law in effect at the time of sentencing (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1, as amended by Pub. Act 80-1099, effective February 1, 1978) before defendant elected to be sentenced under the old law. At the hearing, the following colloquy took place:

> "The Court: Your written motion for a new trial and arrested judgment is denied.
>
> At this time this Court has reviewed the presentence investigation on Mr. Jones in great detail. The Court is prepared to sentence the Defendant under the new law after February 1, 1978 or the old law as it existed before said date.
>
> Mr. Franklin (defense counsel): We'll ask the Court to sentence Mr. Jones under the old law.
>
> The Court: Under the old law than as you know the Armed Robbery carried at that time and the Defendant is subject to that. A sentence from four years to an indeterminate term up to a period of life imprisonment. That the indeterminate period would be a range of years from a minimum of four on up. Pursuant to that the Defendant does understand that, is that correct Mr. Franklin?
>
> Mr. Franklin: That's correct."

At no time did the court explain to defendant that despite the fact that the new law had a sentencing range of from six to 30 years as opposed to the sentencing range of four years to an indeterminate term under the old law, it held certain advantages over the old law, such as a mandatory supervised release term of three years as opposed to a five-year mandatory parole term under the old law and one day of good conduct credit for each day of service in prison. Defendant argues that since he was not apprised of these advantages, his waiver of sentencing under the new law cannot be considered to have been an intentional relinquishment of a known right. (*Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.) We disagree.

■ We do not find any indication in the present record that defendant did not intelligently waive his right to be sentenced under the new law. At no time was the court informed that defendant did not fully understand his options under the old and new laws. In fact, the colloquy between the court and defendant's counsel would at least create the impression that there was no confusion or lack of knowledge, and thus no need to explain the differences between the respective codes. Also, we cannot say that defendant's choice of sentencing under the old law over sentencing under

the new law creates any "serious doubts" over the validity of waiver. Unlike *People v. McElroy* (1974), 23 Ill. App. 3d 674, 320 N.E.2d 129, heavily relied upon by defendant, there was no clearly ridiculous choice of sentencing under a statute which provided a four-year minimum instead of under a statute which provided a 2 1/3-year minimum. In the present case, defendant chose sentencing under the code which offered the lower minimum. Though the new law offered some advantages over the old law, we cannot say defendant's failure to choose the new law demonstrates that he made an unintelligent choice in sentencing. Thus, we cannot say that a new sentencing hearing is required on this ground either.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.