THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JUAN GARZA, Defendant-Appellant.

First District (5th Division)   No. 83—1444

Opinion filed June 15, 1984.

Gordon H. Berry, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jane E. Liechty, and William G. McGarr, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was found guilty and sentenced to concurrent eight-year terms for home invasion and rape. On appeal, he contends that: (1) in imposing sentencing the trial court improperly considered a prior arrest for a similar offense; (2) his conviction for rape must be vacated because it is a lesser-included offense of and therefore merged with his conviction for home invasion; and (3) the complaining witness' prior identification of him as well as certain physical evidence were the fruits of an illegal arrest and should have been suppressed.

At trial, the complainant testified that she was living in a second-floor apartment of a furnished rooming house at 4422 South Emerald on May 31, 1980. At approximately 8:30 p.m. on that date she was standing at the door of her apartment when defendant suddenly appeared at her side, pushed her through the doorway, and entered the

room. Once inside, he turned on the light, forced her to disrobe, and after removing his own clothing, he pushed her onto the bed, and raped her. During that time, he struck her on the left side of the forehead, causing it to swell, and threatened to kill her if she screamed for help. After the attack, she asked defendant if she could fix a drink and, when he agreed, she prepared two drinks, handed one to defendant, then sat on the edge of the bed for approximately 15 minutes while he drank. When defendant allowed her to put on her clothes, she asked if she could take her dog out, and he agreed after she promised to return. Complainant further stated that, as soon as she left the room, she ran to the home of a friend in an apartment across the street and related the incident to her friend's daughter and the building manager who called the police and also paramedics because she (complainant) was experiencing severe vaginal bleeding. She was transported to a hospital where she remained through the weekend. The same night, while she was being treated in the emergency room, officers brought two men into the room, and she identified defendant as her assailant. On cross-examination, the complainant acknowledged that she had resided in her apartment for only a few days, and that during the incident she did not cry out or observe any weapons.

Officer Tyler testified that he was in the vicinity of 44th and Halsted at approximately 10:30 p.m. on the date in question when he received a call of a "woman down." Upon arriving at the scene, he spoke to several people, then briefly interviewed the complainant, who stated that she had been raped and described her assailant as a male Mexican, approximately 5 feet 6 inches tall, and weighing 145 to 150 pounds. Tyler also testified that he went immediately to the building where the incident occurred and found two male Latins who matched the description. Both men were held for questioning and taken to the hospital, where the complainant viewed each of them separately. When the first man entered the room, the complainant stated that he was not her assailant; however, when defendant entered, she became very upset and said that he was the man who had raped her.

It was stipulated that, if called, laboratory technicians employed by the Chicago police department would testify that a fingerprint lifted from a drinking glass in the complainant's apartment on the night of the incident matched prints taken of defendant at the time of his arrest; and that a small amount of human blood was found in the crotch area of the pants defendant was wearing when arrested, but the amount thereof was insufficient to determine blood grouping. It was further stipulated that, if called, Dr. Paguaga would testify that

when he examined the complainant after the incident, he observed an abrasion and laceration in the external genital area of the vagina, as well as vaginal bleeding.

Defendant testified that when he first moved to the rooming house at 4422 South Emerald one month before the incident, he resided in the room later occupied by the complainant. However, approximately one week before the incident, he moved to the room next door. He did not know that complainant had moved into his former room, and had never seen her in the apartment building. Defendant also stated that all of the rooms were furnished by the landlord, but the tenants supplied their own pans, glasses, utensils and bedding, and that when he moved to the second room, he took all of his clothing and utensils with him. Defendant further testified that on the date in question he left work at 4 p.m., had a few beers with co-workers, then visited a friend at 83rd and Burleigh until a little after 9 p.m., when he took a bus back to his apartment. Shortly after arriving there, he heard a commotion in the hall, and when he opened the door a police officer grabbed him and placed him under arrest. Defendant stated that he did not go to the complainant's room that day, and denied ever having sexual intercourse with her.

OPINION

■ Defendant first contends that his sentences should be reduced or vacated because the trial court improperly considered a prior arrest for a similar offense where there was no accurate, reliable evidence thereof, and under circumstances which deprived him of the opportunity to challenge its reliability.

The law with regard to what may properly be considered in imposing sentence is well settled, and places within the trial court's sound discretion the delicate task of balancing the need to protect society's interests against the mandate that sentences allow for the possibility of rehabilitation (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882), and as an aid to the court in the exercise thereof, the legislature has set forth specific factors which may be considered in aggravation and mitigation (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.1, 1005—5—3.2). In addition, case law provides that the trial court may consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age (*People v. Perruquet*) as well as prior convictions (*People v. Franklin* (1978), 64 Ill. App. 3d 400, 380 N.E.2d 1082), but it is established that mere charges or arrests may not be considered (*People v. Perry* (1976), 38 Ill. App. 3d 81, 347 N.E.2d 340), unless relevant, accurate evidence

thereof has been presented under circumstances which allow the defendant to confront and cross-examine witnesses (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344). However, even where improper evidence is presented, such as a showing of the bare fact that an arrest occurred or a charge was made, we will presume that the trial court, knowing the law, considered only proper evidence in imposing sentence, and disregarded that which was improper (*People v. Mosley* (1980), 87 Ill. App. 3d 903, 409 N.E.2d 381). Thus, it is not enough to show that the trial court had knowledge of prior arrests (*People v. Shumate* (1981), 94 Ill. App. 3d 478, 419 N.E.2d 36), or that the State argued that factor in urging the imposition of a harsher sentence (*People v. Mosley* (1980), 87 Ill. App. 3d 903), or even that the trial court itself mentioned the arrest during the sentencing hearing (*People v. Shumate* (1981), 94 Ill. App. 3d 478; *People v. Jones* (1980), 81 Ill. App. 3d 798, 401 N.E.2d 1054); rather, the record must affirmatively disclose that the arrest or charge was considered by the trial court in imposing sentence (*People v. Poll* (1980), 81 Ill. 2d 286, 408 N.E.2d 212; *People v. Shumate* (1981), 94 Ill. App. 3d 478).

In the instant case, the record reveals that the presentence investigation report contained a sheet of paper from the Chicago police department identification section which listed defendant's numerous encounters with law enforcement officials, both convictions and arrests for which no convictions were shown. The vast majority of those incidents were for driving while intoxicated, but the list included a single arrest, without showing any disposition thereof, for "aggravated assault on a female." No objection was made to the inclusion of this information in the presentence report, and the State made no mention of any convictions or arrests in arguing factors in aggravation during the sentencing hearing. However, during defense counsel's argument of factors in mitigation, the following colloquy took place:

"COUNSEL: Your Honor, I know that you read the Pre-Sentence Investigation. It indicates that Mr. Garza has no significant prior criminal history. It indicates that he has had some problem with drinking.

COURT: Well, he had one case in Texas, where he was found guilty—it doesn't say whether he was found guilty or not. But he was charged, in June of '75, with aggravated assault on a female.

COUNSEL: Your Honor, I believe the charge is not really relevant for sentencing purposes.

COURT: I'm just adding that to the rest of the B and I's."

It is defendant's position that this exchange demonstrates that

the trial court considered the arrest in imposing the sentences. We disagree. It appears to us that it shows only the knowledge of the trial court that there had been a prior arrest, and its response to defense counsel's reminder that it should not be considered is indicative of the court's understanding of that principle. As noted previously, it is not enough to show that the trial court made mention of the improper evidence—it must affirmatively appear that the evidence was a factor in the sentence imposed. Recently, in *People v. Jones* (1980), 81 Ill. App. 3d 798, 401 N.E.2d 1054, we rejected a similar argument where the trial court stated at the sentencing hearing that it had reviewed the defendant's record, including the fact that he "ha[d] an extensive record though only two convictions," noting:

> "We believe that this statement is too unclear to represent a 'definite indication' that the trial court considered the prior arrests in rendering sentence. [Citation.] Certainly, defendant's prior record of convictions, his violation of probation by committing the present crime, and the seriousness of the present crime formed a proper and sufficient basis for the six- to 10-year sentence which he received from the court. In light of this background and without some definite indication that the trial court considered the prior arrests in determining sentence [citations], we cannot say that a new sentencing hearing is required on this ground." 81 Ill. App. 3d 798, 806-07, 401 N.E.2d 1054, 1061.

Similarly, here, the record does not contain any definite indication that, in imposing sentence, the trial court considered the arrest in question, and the sentences of eight years, only two years beyond the statutory minimum of six years for Class X felonies (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(3)), were proper in light of the seriousness of the crimes for which defendant was convicted. Therefore, it appears to us that neither a reduction in the sentences or a new sentencing hearing is mandated under the circumstances.

■ Defendant next contends that his rape conviction must be vacated because, it is a lesser-included offense of his home invasion conviction, where the information charges that he "committed the offense of home invasion in that he not being a peace officer acting in the line of duty without authority knowingly entered the dwelling place of [complainant] and had reason to know that one or more persons were present therein and intentionally injured [complainant] within such dwelling place *by raping her.*" (Emphasis added.)

The standard by which we are to determine the propriety of multiple convictions and sentences was set forth in *People v. King* (1977),

66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, wherein the supreme court ruled:

> "Prejudice results to the defendant only in those instances where more than one offense is carved with the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense."

More recently, in defining a lesser-included offense for purposes of this standard, we noted that "to be a lesser included offense, the greater offense must include *every element* in the lesser offense plus one or more elements; the lesser offense does not have any element that is not included in the greater one. In other words, it is impossible to commit the greater offense without necessarily committing the lesser also." *People v. Pavic* (1982), 104 Ill. App. 3d 436, 448, 432 N.E.2d 1074, 1083-84.

Under the above rule, it is clear that rape is not, by definition, a lesser-included offense of home invasion. Home invasion requires proof that

(1) one who is not a peace officer acting in the line of duty,

(2) knowingly entered into the dwelling place of another without authority,

(3) having reason to know that one or more persons was present, and

(4) intentionally caused any injury to any person or persons therein. (Ill. Rev. Stat. 1979, ch. 38, par. 12—11.)

Rape, on the other hand, requires proof that

(1) a male person 14 years of age or older,

(2) had sexual intercourse with a female, not his wife, and

(3) by force and against her will. (Ill. Rev. Stat. 1979, ch. 38, par. 11—1.)

Thus, the two crimes have no common elements. However, because of the unusual wording employed by the State in charging the offenses herein, the question remains whether the State has converted rape into a lesser-included offense. It is defendant's position that it did so because, as charged, the rape is a necessary element of the crime of the home invasion; *i.e.*, the injury. We disagree. We have determined

that injury, for purposes of the home invasion statute, necessarily requires physical injury, that is, pain or damage to the body. (*People v. Bitner* (1980), 89 Ill. App. 3d 1106, 412 N.E.2d 721.) Rape, however, requires no physical injury. The State need not prove that any pain or damage to the body occurred in order to sustain its burden of proving that a rape occurred. (*People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633.) In the instant case, then, the State could not have sustained the charge of home invasion merely by showing that a rape occurred; it had to prove some physical injury resulting therefrom. It met that burden through proof that the victim, as a result of the rape, suffered an abrasion and laceration of the external genital area, vaginal bleeding, and swelling on her forehead where defendant struck her.

It is our view that, in charging that defendant "intentionally injured [complainant] *** by raping her," the State did no more than make explicit that which was implicit in the facts of this case: that the acts which constituted the crime of rape also gave rise to the physical injury which is a necessary element of the crime of home invasion. One requirement of rape is that there be sexual intercourse, defined as penetration. That occurred in the instant case, and it appears that, incidental thereto and perhaps in the course of accomplishing penetration, the defendant also caused physical injury to the complainant. Similarly, the element of force necessary to the charge of rape was satisfied, in part, by proof that defendant struck the complainant; that blow also caused physical injury which, again, would sustain the charge of home invasion.

It seems to us that defendant's true contention, although expressed as an assertion that the rape, here, was a lesser-included offense of home invasion, is that the crimes charged were carved out of the same physical act. Therefore, we have considered whether reversal is required where, although multiple acts occurred, one or more of the acts served a dual purpose in establishing an element of each crime charged. After a careful analysis of recent cases, we have concluded that multiple convictions are proper under those circumstances.

In *People v. Pavic* (1982), 104 Ill. App. 3d 436, 432 N.E.2d 1074, we affirmed the defendant's convictions for rape, deviate sexual assault, robbery, burglary, and home invasion. There, the defendant entered the complainant's home, choked and threatened her, then raped and robbed her. Clearly, the acts which constituted the element of force, for purposes of the rape, also constituted the element of physical injury to sustain the charge of home invasion. More importantly,

we rejected the defendant's contention that burglary was a lesser-included offense of home invasion because both were based on the same act of entry, ruling that, since they required proof of different mental states, "[c]onsonant with the supreme court's reasoning in *People v. King,* defendant's interrelated acts adequately support the multiple convictions and concurrent sentences because burglary is not, by definition, a lesser included offense of home invasion." 104 Ill. App. 3d 436, 449, 432 N.E.2d 1074, 1084.

More recently, in *People v. Dixon* (1984), 122 Ill. App. 3d 141, 460 N.E.2d 858, we affirmed convictions for burglary, home invasion, and murder where the defendant set one foot inside the victim's home and fired a single shot. Clearly, under those circumstances, the single act of entry was an element of both burglary and home invasion, while the act of shooting the victim established both the injury element of home invasion and the killing without legal justification which sustained the murder conviction. Nevertheless, we ruled that, since none of the crimes were lesser-included offenses of the others, and there were multiple acts, their interrelationship did not preclude multiple convictions and concurrent sentences. 122 Ill. App. 3d 141, 149, 460 N.E.2d 858, 862-63.

Finally, in affirming the defendant's conviction for home invasion and aggravated battery based on the use of a deadly weapon in *People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272, the court observed that there was no authority for the proposition espoused by the defendant therein "that a person cannot be guilty of two offenses when a common act is part of both offenses or part of one offense and the only act of the other." (106 Ill. App. 3d 774, 778-79, 436 N.E.2d 272, 276.) Based on the foregoing cases, it is our view that multiple convictions and sentences for home invasion and rape are proper in the instant case.

Defendant further contends that the complainant's identification of him at the hospital as well as the bloodstained pants taken from him after his arrest should have been suppressed because both were the fruits of an illegal arrest. He acknowledges that this issue was not raised at trial, but asserts that we may consider it under the plain error exception established by Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), and argues that, since the only information that the arresting officer had was a general description supplied by the complainant, there was no probable cause for his arrest.

Under proper circumstances, we may review the question of probable cause for arrest despite the defendant's failure to make a motion to suppress or to object to the admissibility of evidence obtained as a

fruit thereof (see *People v. Willis* (1976), 39 Ill. App. 3d 905, 351 N.E.2d 330); but we have made it clear that the question will be deemed waived where the defendant's failure to raise it precludes us from determining what the full evidence might have been had the State been called upon to justify the arrest (*People v. Calderon* (1981), 101 Ill. App. 3d 469, 428 N.E.2d 571). Here, the arresting officer testified that the complainant described her assailant as a male Mexican, approximately 5 feet 6 inches tall, and weighing 145 to 150 pounds. It is defendant's contention that this information alone was insufficient to justify his arrest. However, Officer Tyler further stated that he spoke to others at the scene, but did not identify them or repeat the substance of their conversations, evidence which would have been admissible at a motion to suppress. Furthermore, the arrest report indicates that another officer also responded to the call, and it is stated therein that "[b]ased on victims [*sic*] description *and approx. apartment on floor*, 2 suspects were interviewed and taken where victim identified [defendant] as the offender." It appears, then, that the officers may have had additional information, not revealed at trial, regarding approximately where the assailant resided, and it is possible that witnesses informed the officers that no one had exited the building subsequent to the attack.

In the instant case, we need not speculate on what further information the officers might have had, for it is our view that the police procedure in the instant case was proper, regardless of the existence of probable cause. In *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605, *cert. denied* (1982), 459 U.S. 841, 74 L. Ed. 2d 85, 103 S. Ct. 92, the supreme court noted that "a middle ground can exist wherein an investigatory procedure, such as an immediate showup, can be employed by officers acting on somewhat less than probable cause to arrest" (89 Ill. 2d 171, 182, 432 N.E.2d 605, 610), reasoning that "a short period of detention was only minimally intrusive when compared to the benefit of immediate investigation" (89 Ill. 2d 171, 183, 432 N.E.2d 605, 610). There, an officer was told by victims of a robbery that the crime had occurred approximately 25 minutes earlier, and they described one of the offenders as 5 feet 11 inches tall, with medium length blond hair, and another as having bushy brown hair and wearing a blue jacket. A short time later, the officer encountered a car containing two men who matched the description. The men were stopped, taken into custody, and transported to the place where the victims were located. The victims identified both men as their assailants, and later that night each of them gave an inculpatory statement to the police. On appeal they argued that the initial identifications and

the subsequent confessions should have been suppressed because the officer lacked probable cause to detain them or to transport them to another location for purposes of identification.

The supreme court found that, while the question was close, probable cause existed since the area was sparsely populated, noting that, under those circumstances, the number of persons likely to fit the rather general descriptions, was sufficiently limited to avoid arbitrary or wholesale arrests. (89 Ill. 2d 171, 180, 432 N.E.2d 605, 609.) The court went on to state:

> "While we have determined that probable cause to arrest existed at the time defendant was placed in the deputy's squad car, we also consider the transportation of the defendant the short distance involved here for purposes of a showup to have been a legitimate investigatory procedure even if one considers the grounds to have been less than probable cause to arrest."

(89 Ill. 2d 171, 181-82, 432 N.E.2d 605, 609-10.) The factors considered by the court in determining that the procedure therein was proper are remarkably similar to the facts of the instant case, and are therefore worthy of detailed description:

> "Deputy Dugan *** was conducting a field investigation within just a few minutes of the crime. The stop of defendant occurred no more than 35 minutes after the robbery and very close to the scene of the crime. In the context of the time and place of the stop, late night on a virtually deserted country road, considering that both defendant and his passenger fit the descriptions given him by the victims, considering that simple questioning was inadequate to produce further information, considering that the victims, who were only a few minutes away, could immediately confirm or deny the identification of the suspects as the robbers, and, perhaps most importantly ***, considering that the transportation of defendant to the inn was not significantly more intrusive upon his liberty than detaining him to await arrival of the victims, we believe that the circumstances are much closer to those of permissible stop under *Terry* and *Adams* than the impermissible station house, custodial questioning tantamount to a full blown arrest in *Brown* and *Dunaway*." 89 Ill. 2d 171, 184, 432 N.E.2d 605, 611.

Here, Officer Tyler was conducting a field investigation in the immediate area of the crime shortly after it occurred. The population of the building being searched was small, and defendant matched the description provided. In addition, as in *Lippert*, the complainant was

only a short distance away and could immediately confirm or deny the identification. Therefore, we conclude that the detention of defendant and his transportation to the hospital were proper and, in the absence of any allegation that the showup identification was unreliable, it is our view that evidence thereof was properly admitted. Moreover, once the complainant identified defendant, probable cause for his arrest existed, and there is therefore no merit to his contention that the physical evidence obtained thereafter should have been suppressed.

For the foregoing reasons, defendant's convictions and sentences for rape and home invasion are affirmed.

Affirmed.

MEJDA, P.J., and LORENZ, J., concur.